AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
#### Southern District of Texas

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
**FILED**
*August 03, 2020*
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Lee Price III | ) | Case No.  **4:20mj1366** |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 2020 to the present** in the county of **Harris** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1014 | False Statements to Financial Institution |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Engaging in Prohibited Monetary Transactions |

This criminal complaint is based on these facts:

See attached affidavit of probable cause

☑ Continued on the attached sheet.

*Complainant's signature*

Kyle Shadowens, US Postal Inspector
*Printed name and title*

Sworn to before me telephonically.

Date: August 03, 2020

*Judge's signature*

City and state: Houston, Texas

Sam S. Sheldon, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Postal Inspector Kyle Shadowens, being first duly sworn, state:

## INTRODUCTION

1. I make this affidavit in support of a criminal complaint establishing probable cause for the arrest of Lee PRICE III for committing the following offenses in the Southern District of Texas between April 2020 and the present:

   a. 18 U.S.C. § 1014, False Statements to a Financial Institution;

   b. 18 U.S.C. § 1343, Wire Fraud;

   c. 18 U.S.C. § 1344, Bank Fraud; and

   d. 18 U.S.C. § 1957, Engaging in Prohibited Monetary Transactions.

2. As described below, there is probable cause to believe that PRICE committed the above-listed offenses in connection with a bank and wire fraud scheme targeting the Paycheck Protection Program ("PPP"), a program created to address the economic fallout of the COVID-19 pandemic by providing forgivable loans to small businesses.

## AGENT BACKGROUND

3. I am employed as a federal law enforcement officer by the United States Postal Inspection Service. I have been employed as a federal law enforcement officer since 2013, and I am currently assigned to the Financial Crimes/Mail Fraud team in the Houston Division of the United States Postal Inspection Service. I am responsible for conducting and have conducted many investigations into fraud, identity theft, and related "white collar" offenses. I have been licensed as an attorney by the State Bar of Texas since 2010, and I am a Certified Fraud Examiner. I have received training in how to investigate numerous Postal crimes, but primarily those involving

identity theft, mail fraud, wire fraud, bank fraud, and related "white collar" offenses. I am authorized to obtain and execute Federal Arrest and Search Warrants.

4. The information presented in this affidavit is based on my own personal investigation and the investigation of other law enforcement officers, which was communicated to me orally or via written communication. The facts set forth do not constitute all that has been learned in the course of the investigation but only enough to establish that probable cause exists for the issuance of a complaint and arrest warrant for PRICE.

## OVERVIEW OF THE PAYCHECK PROTECTION PROGRAM

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive

under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

7. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100 percent guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

**OVERVIEW OF THE SCHEME AND IDENTIFICATION OF RELEVANT PARTIES**

*Overview of the Scheme*

9. As described in detail below, investigators believe that PRICE transmitted several materially fraudulent PPP loan applications to lenders and thereafter used the loan funds to make impermissible purchases.

*Background of PRICE and Related Individuals and Entities*

10. PRICE is a resident of Houston, Texas, and purports variously to be an executive at Price Enterprises Holdings LLC ("Price Enterprises"), Price Logistic Services LLC ("Price Logistic"), and 713 Construction LLC ("713 Construction"). PRICE has a lengthy criminal history, including felony convictions for forgery in 2010 and for robbery in 2011. PRICE is

currently the defendant in an active criminal case in Harris County, Texas, in which he is charged with the felony offense of tampering with a government record.

11. Coconspirator 1 is a resident of Houston, Texas, and believed to be an associate of PRICE. Coconspirator 1 has prior criminal convictions, including a felony conviction for burglary.

12. Price Enterprises is a limited liability company formed under Nevada law in 2019 and licensed to do business in Texas on April 28, 2020. Price Enterprises has never filed with the Texas Workforce Commission ("TWC"), as would be required, indicating that it has not hired employees or paid unemployment taxes. Additionally, Price Enterprises has not yet reported any revenue to the Texas Comptroller of Public Accounts ("Texas Comptroller"). Price Enterprises claims a business address of 2800 Post Oak Boulevard, Suite 4100, Houston, Texas 77056.

13. Price Logistic is a limited liability company that was formed in 2012, later went into tax forfeiture, and was reinstated to do business in Texas in 2020. Price Logistic has never filed with the TWC, indicating that it has not hired employees or paid unemployment taxes. Additionally, Price Logistic has not reported any revenue to the Texas Comptroller. Price Logistic claims a business address of 2800 Post Oak Boulevard, Suite 4100, Houston, Texas 77056.

14. 713 Construction is a limited liability company that was licensed to do business in Texas on February 25, 2020. Records indicate that 713 Construction has never filed with the TWC, indicating that it has not hired employees or paid unemployment taxes. Additionally, 713 Construction has not yet reported any revenue to state authorities. 713 Construction claims a business address of 700 Louisiana Street, Suite 3950, Houston, Texas 77002.

*Other Relevant Entities*

15. Bank 1 is based in Boston, Massachusetts. It is a federally insured financial institution and a member of the Federal Home Loan Bank System. Bank 1 is an approved SBA

lender and has participated as a lender in the PPP. Bank 1 received PPP loan applications on behalf of Price Enterprises and Price Logistic.

16. Bank 2 is based in Salt Lake City, Utah. It is a federally insured financial institution and a member of the Federal Home Loan Bank System. Bank 2 is an approved SBA lender and has participated as a lender in the PPP. Bank 2 received a PPP loan application on behalf of Price Enterprises.

17. Bank 3 is based in Oklahoma City, Oklahoma. It is a federally insured financial institution and a member of the Federal Home Loan Bank System. Bank 3 is an approved SBA lender and has participated as a lender in the PPP. Bank 3 received a PPP loan application on behalf of Price Enterprises.

18. Bank 4 is based in Charlotte, North Carolina. It is a federally insured financial institution.

19. Bank 5 is based in San Francisco, California. It is a federally insured financial institution.

20. Lender 1 is based in California. Lender 1 is an approved SBA lender and has participated as a lender in the PPP. Lender 1 received a PPP loan application on behalf of 713 Construction.

## PROBABLE CAUSE

*The Price Enterprises PPP Application to Bank 1*

21. According to information received by Bank 1, in or around May 2020, a PPP loan application was submitted to Bank 1 on behalf of Price Enterprises ("Application 1"). This

5

application is filled out by hand and dated May 10, 2020.[1]  Application 1 requests a PPP loan of $937,500.

22.     The listed name of the individual who submitted Application 1 is "Lee Price." The contact phone number listed has a 346 area code.  Separate phone records show this phone number is registered in the name of PRICE.

23.     Investigation has revealed that Application 1 contains multiple statements that appear to be false and suspicious.  Many of these are identified below.

24.     On Application 1, the applicant claims that Price Enterprises has 50 employees and an average monthly payroll of $375,000.  However, investigation indicates Price Enterprises has no employees and no payroll.

25.     By rule, Texas employers must submit reports of wages paid to the TWC. Employers in Texas must also provide information about newly hired workers to the TWC within 20 days of hiring.  Further, all Texas employers must establish an unemployment tax account with the TWC.  State law requires that employers in Texas pay unemployment tax on each eligible employee.

26.     TWC has no records indicating that Price Enterprises ever reported any wages for any employee.  The absence of such records also indicate that Price Enterprises has never reported a hire, nor has Price Enterprises ever paid any unemployment tax.  These facts lead investigators to believe that Price Enterprises has never paid any wages or hired any employees.

27.     Additionally, records were obtained from the Texas Comptroller relating to Price Enterprises.  Price Enterprises registered with the Texas Secretary of State on April 28, 2020.  Prior to this date, it did not have authorization to conduct business in Texas.

---

[1] Although this application is dated May 10, 2020, evidence indicates that it may not have been transmitted to Bank 1 until June 2020.

6

28. Investigators have reason to believe that the applicant provided Bank 1 with his father's social security number instead of his own. Application 1 identifies "Lee Price" as the CEO and 100 percent owner of Price Enterprises. The social security number listed for "Lee Price" belongs to Lee Price Jr., who is the father of PRICE. Open-source research indicates that the purported owner of Price Enterprises is PRICE, not Lee Price Jr. Indeed, Lee Price Jr. has no known affiliation with Price Enterprises. As such, investigators suspect that PRICE may have misused his father's social security number.

29. Also, Application 1 requires the applicant to state whether he or she is currently subject to any pending criminal charges, on probation, or on parole. In the Price Enterprises application to Bank 1, the applicant answered "no." This is inaccurate. A Harris County, Texas, criminal records search shows PRICE is currently facing state felony charges of tampering with a government record.

30. The supporting documentation submitted in connection with Application 1 also bears indicia of fraud.

31. The supporting documents include an Internal Revenue Service ("IRS") Form 940, which is an employer's annual federal unemployment tax return. This document lists that Price Enterprises paid unemployment tax in Texas, but this is false. As mentioned in paragraph 26, Price Enterprises has never paid unemployment tax to the TWC. In fact, in a filing with the Texas Secretary of State, PRICE stated that the first day on which Price Enterprises conducted business in Texas was January 1, 2020.

32. Furthermore, the submitted Form 940 lists the total unemployment tax liability for Price Enterprises as $42 for 2019. In fact, if Price Enterprises actually employed 50 individuals

and paid the putative salaries that appear on Application 1, the entity would have federal unemployment tax liability substantially greater than $42.

33. Additionally, the applicant submitted several purported IRS Forms 941, which are an employer's quarterly federal tax return. The four Forms 941 for the four quarters preceding the PPP application all list identical information—they note that Price Enterprises had 50 employees and total wages of $1,444,332. Again, the TWC has no record of any wages ever being paid by Price Enterprises to any employee. These documents are purportedly signed by "Mike Smith," who is listed as "CFO." Investigators have failed to identify anyone named Mike Smith who is affiliated with Price Enterprises. Also, as noted in paragraph 51, below, on Forms 941 for the same period submitted to other banks, a different individual is listed as CFO.

34. The applicant also provided two documents titled "Payroll Spread 2019." The documents list 25 names each. One claims to pertain to the "Dallas Office," while the other does not specify a location. As mentioned in paragraph 31, above, PRICE informed the Texas Secretary of State that Price Enterprises did not conduct business in Texas until January 1, 2020.

35. Further investigation suggests that the individuals listed on these payroll sheets are not actual employees of Price Enterprises. No wage information, or hiring information was provided by Price Enterprises to the TWC for any of these individuals. No unemployment tax has ever been paid to the TWC for any of these individuals. To date, investigators have not been able to find any connection between any of the names listed on this sheet and Price Enterprises. Mike Smith, the purported CFO discussed above, is not identified as an employee on these sheets.

36. The applicant also submitted a copy of the Oklahoma driver license belonging to Lee Price Jr. As explained in paragraph 28, above, investigators believe that the loan applicant and the operator of Price Enterprises is actually PRICE, not Lee Price Jr.

37. Application 1 was approved, and Bank 1 funded the loan. The loan documents were electronically signed by "Lee Price" on June 23, 2020.

### Disbursement and Use of the PPP Loan Funds from Bank 1

38. On or about May 11, 2020—one day after the date on the application discussed above—an application for a checking account in the name of "Price Enterprises Holdings LLC" was submitted to Bank 4. This application was approved, and the checking account was opened on or about May 20, 2020.

39. The checking account lists an employer identification number for Price Enterprises of 850991030. This does not appear to be an authentic employer identification number. The Texas Comptroller has no record of this number.

40. The account owner for the Price Enterprises checking account is listed as "Lee E Price." The address associated with this account is 10718 Staghill Drive, Houston, Texas 77064. This is the same address listed on PRICE's Texas driver license.

41. On or about June 26, 2020, Bank 1 funded the loan connected to Application 1. The PPP loan proceeds of $937,500 were deposited into the Price Enterprises account.

42. Over the subsequent days, much of this money was spent on luxury items and other personal purchases. These expenditures do not constitute appropriate uses of PPP proceeds.

43. For example, on or about June 27, 2020, $233,337.60 was withdrawn for the Bank 4 account to purchase a Bank 4 cashier's check. This cashier's check was used to purchase a 2019 Lamborghini Urus. The seller of the Lamborghini confirmed to investigators that the buyer of the vehicle was PRICE.

44. On or about June 26, 2020, a purchase of $14,343.13 was made from the Price Enterprises Bank 4 account. This money was used to buy a Rolex watch. The seller of the watch confirmed to investigators that the buyer was PRICE. The buyer of the watch provided PRICE's Texas driver license when buying the watch. Also, a photograph was captured of the individual making the purchase, and the person in that photograph matches the description of PRICE.

45. Bank records show the funds from the Bank 4 account were also used on clothes, dinners, and entertainment. As a few examples, between June 27 and June 30, 2020, it appears that over $700 was spent at a liquor store, approximately $2,000 was spent at a strip club, and over $2,500 was spent at two Houston night clubs.

46. Additional funds were used to facilitate real estate transactions, which agents continue to investigate. For example, records indicate that $100,000 from the Bank 4 account was used as a down payment on a property in north Houston. Additionally, records show that another $108,000 from the bank 4 account was used to pay for a new lease of business office space in the Memorial City area of Houston.

### *The Price Enterprises PPP Application to Bank 2*

47. According to information received by Bank 2, in either May or June 2020, a PPP loan application was submitted to Bank 2 on behalf of Price Enterprises ("Application 2").

48. Application 2 contained two versions of the loan application form. One version, filled out by hand, was identical to the form submitted to Bank 1, discussed above. This application lists the same 346 area code phone number as the contact number for Price Enterprises. As mentioned above, this number is registered to PRICE.

49. The handwritten version of the forms within Application 2 contained exactly the same false and fraudulent statements that were made in Application 1, discussed in paragraphs 24

to 29, above. These false statements include the assertion that Price Enterprises' average monthly payroll was $375,000, when in fact it appears that Price Enterprises has no monthly payroll expenses at all.

50. A second, typewritten form was also provided in Application 2. This form lists a business phone number that has a 281 area code. This phone number is registered to PRICE. The form also provides a different personal address for "Lee Price." Other than the change of address and phone number, the typed version contains identical information as the two applications already discussed. The application includes the same false statements discussed in paragraphs 24 to 29, above.

51. In support of Application 2, the applicant submitted an IRS Form 941 listing putative wages paid in the first quarter of 2020. This Form 941 claimed that Price Enterprises employed 50 people and paid total quarterly wages of $1,444,332. The document is purportedly signed by "Micheal Stevens," who is identified as "CFO." This conflicts with the Form 941 for the first quarter of 2020 that was submitted as part of Application 1, which listed the CFO as "Mike Smith."

52. Application 2 was initially approved, and a promissory note was prepared. Although the loan was approved, it was ultimately not funded.

### *The Price Enterprises PPP Application to Bank 3*

53. According to information received by Bank 3, on or about May 12, 2020, a PPP loan application was submitted to Bank 3 on behalf of Price Enterprises ("Application 3").

54. Like the applications already discussed, Application 3 requests a loan in the amount of $937,500 based on purported average monthly payroll expenses of $375,000.

55. Application 3 provides a contact number with a 346 area code, which is the same number registered to PRICE and discussed above.

56. Application 3 contains the exact same false statements about Price Enterprises employees and payroll expenses discussed in paragraphs 24 to 27.

57. Application 3 also contains the same false statements about the applicant's criminal history discussed in paragraph 29.

58. Application 3 provides a business identification number for Price Enterprises ending in 1030. This is a different business identification number than the numbers provided in the Applications 1 and 2. The number also appears to be fraudulent, as it is not recognized by the Texas Comptroller and does not correspond to any known business identification number associated with Price Enterprises.

59. Additionally, the applicant provided supporting documents in connection with the Bank 3 PPP loan application. One of these supporting documents is the same handwritten PPP application form discussed above.

60. The applicant also submitted several tax forms purporting to show federal tax liabilities for Price Enterprises in 2019 and 2020. Although these are the same forms and relate to the same time periods as the tax documents provided to Banks 1 and 2, much of the information listed on these forms is inconsistent with the documents submitted to the other banks.

61. For instance, a Form 941 pertaining to the fourth quarter of 2019 was submitted to Bank 3 as part of Application 3. This Form 941 identifies Price Enterprises' total taxes after adjustments as $233,266.75 and purports to be signed by "Lee Price," who is listed as the "CEO." A Form 941 pertaining to the fourth quarter of 2019 was also submitted to Bank 1. That Form 941

lists Price Enterprises' total taxes after adjustments as $454,249.55 and purports to be signed by "Mike Smith," who is listed as the "CFO."

62. As another example, the Form 940 transmitted to Bank 3 states that Price Enterprises paid $21,000 in unemployment tax in 2019, while the Form 940 transmitted to Bank 1 states that Price Enterprises paid $42 in unemployment tax for the same time period.

63. Ultimately, Application 3 was withdrawn.

### *The Price Logistic PPP Application to Bank 1*

64. According to information received by Bank 1, on or about June 27, 2020, a PPP loan application was submitted to Bank 1 on behalf of Price Logistic ("Application 4"). This application requests a PPP loan in the amount of $1,053,158.75.

65. On Application 4, the applicant claims that Price Logistic has 50 employees and an average monthly payroll of $421,263.50. Investigation indicates Price Logistic actually has no employees, no payroll, and no revenue.

66. The TWC has no records indicating that Price Logistic ever reported any wages for any employee. The absence of such records also shows that Price Logistic has never reported a hire, nor has Price Logistic ever paid unemployment tax. These facts lead investigators to believe that Price Logistic has never paid any wages to anyone and has never hired an employee.

67. Additionally, records were obtained from the Texas Comptroller relating to Price Logistic. Price Logistic has been registered with the Texas Secretary of State since 2012. The entity has never reported any revenue. Indeed, in every yearly franchise tax report submitted to the Texas Comptroller, Price Logistic revenue is listed as $0.

68. Application 4 further identifies "Lee Price" as the CEO and 100 percent owner of Price Logistic. The address and Social Security number provided for "Lee Price" correspond to

Lee Price Jr., not PRICE. Investigation indicates that PRICE purports to operate this business. Price Jr. has no known affiliation with Price Logistic.

69. Supporting documents submitted in connection with Application 4, including letters from the IRS, list PRICE—not Lee Price Jr.—as the sole member of Price Logistic.

70. In Application 4, the applicant certified that he is not subject to any pending criminal charges, on probation, or on parole. But as mentioned in paragraph 29, PRICE is currently facing felony charges of tampering with a government record in Harris County, Texas.

71. The Form 940 submitted in connection with Application 4 states that Price Logistic paid $42 in federal unemployment tax in 2019. This is appears to be inaccurate. If Price Logistic actually employed 50 individuals and paid the putative salaries, the entity would have federal unemployment tax liability substantially greater than $42. This error mirrors the inaccuracy in the Price Enterprises application to Bank 1 discussed in paragraph 32.

72. The applicant also provided two documents titled "Payroll Spread 2019." These are the exact same documents submitted in connection with Application 1 discussed in paragraphs 34 and 35. Price Logistic and Price Enterprises purport to be entirely separate businesses, so these putative payroll sheets listing identical employees for both entities is indicative of fraud.

73. Application 4 was initially approved, but Bank 1 ultimately declined to fund the loan.

### *The 713 Construction PPP Application to Lender 1*

74. According to information received by Lender 1, on or about May 2, 2020, a PPP loan application was submitted to Lender 1 on behalf of 713 Construction ("Application 5"). Application 5 requests a PPP loan of $752,452. The contact email address listed on the application is info@713-construction.com.

75. Investigation has revealed that Application 5 contains numerous statements that appear to be false and suspicious. Many of these are identified below.

76. Application 5 states that Victim 1 is the CEO and 100 percent owner of 713 Construction. Victim 1's address is listed as "17711 Dawn Mill Ln Cypress." Investigation has revealed that Victim 1 died on April 7, 2020, at the age of 88. He owned a wine shop near Cleveland, Ohio, and had no known connection to 713 Construction.

77. The signature on Application 5 is in Victim 1's name, and Victim 1 is identified on the application as the primary contact person. But again, Victim 1 died the month before this application was submitted.

78. On Application 5, the applicant claims that 713 Construction has 30 employees and an average monthly payroll of $300,981. However, investigation indicates 713 Construction actually has no employees and no payroll.

79. The TWC has no records indicating that 713 Construction ever reported any wages for any employee. The absence of such records also shows that 713 Construction has never reported a hire, nor has 713 Construction ever paid any unemployment tax. These facts lead investigators to believe that 713 Construction has never paid any wages to anyone and has never hired an employee.

80. Additionally, records obtained from the Texas Comptroller indicate that 713 Construction was formed and was registered with the Texas Secretary of State on February 25, 2020. Prior to this date, 713 Construction did not have authorization to do business in Texas—indeed, it appears that before February 25, 2020, 713 Construction did not exist.

81. Further, a total average monthly payroll of $300,981 for 30 employees equates to average wages of $10,000 per employee each month, or an average annual salary of $120,000.

82. Application 5 lists 713 Construction's address as 700 Louisiana Street, Suite 3950, Houston, Texas 77002. This address corresponds not to an individual office location, but to a coworking space operated by a multinational entity called Servcorp.

83. The supporting documentation submitted in connection with Application 5 also bears indicia of fraud.

84. For instance, the applicant provided Lender 1 a Texas driver license in the name of Victim 1, with an address of 17711 Dawn Mill Lane, Cypress, Texas 77433. Investigation has revealed that this driver license is counterfeit. A search of Texas Department of Public Safety records revealed that Victim 1's purported driver license number is not an actual Texas driver license number.

85. The supporting documents also include a 2019 IRS Form 940. The Form 940 lists that 713 Construction paid unemployment tax in Texas in 2019, but this is false. As mentioned in paragraph 79, 713 Construction has never paid unemployment tax to the TWC. Indeed, 713 Construction was not formed as an entity until February 25, 2020.

86. The Form 940 also claims that 713 Construction paid $2,808,000 in wages in 2019. Another supporting document that purports to be a payroll sheet lists the same wage amount. A separate tax document states that 713 Construction had gross receipts in 2019 of $8,237,961. But again, investigation indicates that 713 Construction did not legally exist until February 25, 2020.

87. Lender 1 approved Application 5 and funded the loan. Upon approval, Lender 1 prepared loan documentation. This documentation included a wire transfer information sheet to be filled out by the applicant. On this sheet, the applicant listed Victim 1 as the CEO of 713 Construction and provided info@713-construction.com as the contact email address.

### *Disbursement and Use of the PPP Loan Funds from Lender 1*

88. On or about May 20, 2020, PPP loan proceeds of $752,452 connected to Application 5 were deposited into an account at Bank 5 in the name of "713 Construction LLC."

89. That same day, a $250,000 check was drawn on the 713 Construction account and deposited into a Bank 5 account in the name of Coconspirator 1.

90. On May 21, 2020, four withdrawals were made from Coconspirator 1's account, totaling $170,000. One of these withdrawals was used to purchase a Bank 5 cashier's check in the amount of $85,000. Investigation indicates that the remaining $85,000 was withdrawn from the account in cash.

91. Also on May 21, the $85,000 cashier's check was used to purchase a 2020 Ford F-350 from a car dealership in the Houston area. The sales documentation obtained from the car dealership included a Texas driver license in the name of PRICE that bore an address of 10718 Staghill Drive, Houston, Texas 77064.

92. Furthermore, the day before, on May 20, 2020, PRICE leased a luxury apartment in midtown Houston. On the lease, PRICE identified his employer as 713 Construction. PRICE listed his title as CEO and claimed an estimated annual income of $1 million. He also stated that he had been employed by 713 Construction since January 4, 2000. Further, PRICE identified his supervisor as "Arron Smith." PRICE provided info@713-construction.com as the contact email address for his supervisor. As mentioned above, this is the same email address listed on the 713 Construction PPP application.

93. In July 2020, investigators saw a white Ford F-350 matching the description of the vehicle described above parked at the luxury apartment PRICE leased. Around this same time, investigators also saw PRICE enter the Ford F-350 at a location in the Memorial City area of

17

Houston. Later in the same month, investigators saw PRICE drive the Ford F-350 from the Memorial City area to midtown Houston.

## CONCLUSION

94.  In total, evidence indicates that PRICE received over $1.6 million via his submission of two false PPP applications. The entities receiving the PPP funding do not appear to have employees or to pay wages that are in any way consistent with the representations made in the PPP applications. Additionally, evidence indicates that PRICE used the PPP loan funds to pay for vehicles, luxury goods, and personal items. As such, the fraudulently obtained money is not being utilized for payroll expenses or for any other legitimate purpose authorized by the PPP.

95.  Based on the foregoing, I submit that there is probable cause that, between April 2020 and the present, PRICE committed the crimes identified in paragraphs 1.a. through 1.d. Therefore, I request that a criminal complaint be issued, along with a warrant for PRICE's arrest.

## REQUEST FOR SEALING

96. I further request that the Court order that all papers in support of this complaint, including the affidavit and arrest warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Kyle Shados
United States Postal Inspector

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) and I find probable cause on August 3, 2020.

_____
Sam S. Sheldon
United States Magistrate Judge