**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

*October 21, 2020*

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| | ' | **CRIMINAL NO. H-20- 20-522** |
| **VS.** | ' | |
| | ' | |
| | ' | **MAGISTRATE NO. H-20-** |
| **LEE E. PRICE, III** | ' | |
| | ' | |

**INDICTMENT**

The United States Grand Jury charges:

**INTRODUCTION**

At all times material herein:

**A. The Defendant**

1.      LEE E. PRICE, III was a resident of Houston, Texas, in the Southern District of Texas.

2.      PRICE purported to be an executive at Price Enterprises Holdings LLC ("Price Enterprises") and 713 Construction LLC ("713 Construction").

**B. Overview of the Paycheck Protection Program**

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.   One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").   In or around April 2020,

1

Congress authorized over $300 billion in additional PPP funding.

4.      In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which is signed by an authorized representative of the business.   The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.   In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.   These figures were used to calculate the amount of money the small business is eligible to receive under the PPP.   In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

5.      A PPP loan application had to be processed by a participating lender.   If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by Small Business Administration ("SBA").   Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6.      PPP loan proceeds had to be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.   The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

**C.  Relevant Banks and Lenders**

7.      Lender 1 was based in California.   Lender 1 was an approved SBA lender and participated as a lender in the PPP.   Lender 1 received a PPP loan application on behalf of 713

2

Construction.

8.     Bank 1 was based in Boston, Massachusetts.  Bank 1 was a federally insured financial institution and a member of the Federal Home Loan Bank System.  Bank 1 was an approved SBA lender and participated as a lender in the PPP.  Bank 1 received a PPP loan application on behalf of Price Enterprises.

**D.  Overview of the Scheme**

9.     From in or around May 2020 through in or around July 2020, both dates being approximate and inclusive, PRICE submitted multiple materially fraudulent PPP loan applications to federally insured financial institutions.  In these applications, PRICE falsified his identity, misrepresented the number of employees and payroll expenses of the entities seeking the loan, and made numerous other false and misleading statements.

**E.  Purposes of the Scheme**

10.     The purpose of the scheme was to enrich PRICE by enabling PRICE to obtain money from the federal government that would not have been provided to him if he had provided truthful information on the PPP loan applications.

**F.  Execution of the Scheme**

11.     It was part of the scheme that on or about May 2, 2020, PRICE submitted a PPP loan application to Lender 1 on behalf of 713 Construction ("Application 1").  Application 1 requested a PPP loan of $752,452.  Application 1 contained several false and fraudulent statements, including the following:

a.  Application 1 stated that Victim 1 was the CEO and 100% owner of 713 Construction.  Victim 1's address was listed as "17711 Dawn Mill Ln Cypress." Victim 1 was an Ohio resident who died before the date on which Application 1 was

3

submitted.

b. On Application 1, PRICE claimed that 713 Construction had 30 employees and an average monthly payroll of $300,981. However, 713 Construction actually had no employees and no payroll.

12.    The supporting documentation submitted in connection with Application 1 also contained false and fraudulent statements. For example:

c. PRICE provided Lender 1 a counterfeit Texas driver license in the name of Victim 1, with an address of 17711 Dawn Mill Lane, Cypress, Texas 77433.

d. The Application 1 supporting documents include a purported IRS Form 940, which was an employer's annual federal unemployment tax return. This document listed that 713 Construction paid unemployment tax in Texas, but in fact, 713 Construction never paid unemployment tax in Texas.

13.    On or about May 3, 2020, PRICE electronically signed a PPP supplemental form, which was transmitted to Lender 1.

14.    Application 1 was approved, and Lender 1 funded the loan.

15.    On or about May 21, 2020, PRICE used $85,000 of the Application 1 loan money to purchase a 2020 Ford F-350 from a car dealership in the Houston area, which was not an appropriate use of PPP loan proceeds.

16.    It was part of the scheme in order to fraudulently obtain money that in or around May 2020, PRICE submitted a PPP loan application to Bank 1 on behalf of Price Enterprises ("Application 2"). Application 2 was dated May 10, 2020. Application 2 requested a PPP loan of $937,500. Application 2 contained several false and fraudulent statements, including the following:

4

    a.  PRICE claimed that Price Enterprises had 50 employees and an average monthly payroll of $375,000.   However, Price Enterprises actually had no employees and no payroll.

    b.  Application 2 required the applicant to state whether he or she was currently subject to any pending criminal charges, on probation, or on parole.   On Application 2, PRICE answered "no."   This statement was false.   Public records show that PRICE was then facing felony charges of tampering with a government record in Harris County, Texas.

17.    The supporting documentation submitted in connection with Application 2 contained a purported IRS Form 940, which was an employer's annual federal unemployment tax return.   This document listed that Price Enterprises paid unemployment tax in Texas, but in fact, Price Enterprises never paid unemployment tax in Texas.

18.    Application 2 was approved, and Bank 1 funded the loan.   The loan documents were electronically signed by "Lee Price" on or about June 23, 2020.

19.    Thereafter, PRICE spent much of the PPP loan money on luxury items and other personal purchases, which did not constitute appropriate uses of PPP proceeds.   For example:

    a.  On or about June 26, 2020, $14,343.13 was used to buy a Rolex watch; and

    b.  On or about June 27, 2020, $233,337.60 was used to purchase a 2019 Lamborghini Urus.

## COUNTS 1-2

### WIRE FRAUD
### (18 U.S.C. § 1343)

20.    The allegations in paragraphs 1-19 are incorporated by reference as if set forth fully herein.

21.     On or about the dates specified below, in the Southern District of Texas, the defendant,

**LEE PRICE, III**,

for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, specifically:

| Count | Date | Description | Lender to which Submitted |
|-------|------|-------------|---------------------------|
| 1 | May 3, 2020 | Electronically signed PPP supplemental form on behalf of 713 Construction | Lender 1 |
| 2 | June 23, 2020 | Electronically signed PPP loan agreement on behalf of Price Enterprises | Bank 1 |

All in violation of Title 18, United States Code, Section 1343.

## <u>COUNTS 3-5</u>

**ENGAGING IN MONETARY TRANSACTIONS IN CRIMINALLY DERIVED PROPERTY**
**(18 U.S.C. § 1957)**

22.     The allegations in paragraphs 1-19 are incorporated by reference as if set forth fully herein.

23.     On or about the dates specified in the table below, in the Southern District of Texas, the defendant,

**LEE PRICE, III**,

knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from the wire-fraud scheme identified in Counts 1 and 2, above:

| Count | Date | Description | Amount |
|-------|------|-------------|--------|
| 3 | May 21, 2020 | Purchase of 2020 Ford F-350 | $85,000 |
| 4 | June 26, 2020 | Purchase of Rolex watch | $14,343.13 |
| 5 | June 27, 2020 | Purchase of 2019 Lamborghini Urus | $233,337.60 |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1))**

24.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts 1 through 2, the defendant,

**LEE PRICE, III**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following assets:

    a.  2019 Lamborghini Urus bearing VIN ZPBUA1ZL8KLA01036;

    b.  2020 Ford F-350 bearing VIN 1FT8W3DT2LED47926;

    c.  Rolex Datejust watch bearing model # M126333-0010;

    d.  Approximately $351.04 in funds seized from Bank of America account ending in 2487;

    e.  Approximately $108,000.00 in funds seized from Wallis State Bank account ending in 2218;

    f.  Approximately $28,808.80 in funds seized from Bank of America account ending

in 2487;

g.  Approximately $79,951.15 in funds seized from Wells Fargo Bank account ending

in 2846; and

h.  Approximately $498,928.93 in funds seized from Wells Fargo Bank account ending

in 4657.

25.     Upon conviction of one or more of the offenses in violation of Title 18, United States

Code, Section 1957, set forth in Counts 3 through 5, the defendant,

**LEE PRICE, III**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1),

any property, real or personal, involved in such offense, or any property traceable to such property.

The property to be forfeited includes, but is not limited to, the following assets:

a.  2020 Ford F-350 bearing VIN 1FT8W3DT2LED47926;

b.  Rolex Datejust watch bearing model # M126333-0010; and

c.  2019 Lamborghini Urus bearing VIN ZPBUA1ZL8KLA01036.

26.     If any of the property described in Paragraphs 24 and 25, above, as being forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code,

Section 2461(c), and Title 18, United States Code, Section 982(a)(1), as a result of any act or

omission of the defendant –

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without

difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraphs 24 and 25 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

Original  Signature on File
FOREPERSON OF THE GRAND JURY

RYAN PATRICK
United States Attorney

By: _____

for  Jim McAlister
Assistant United States Attorney
Southern District of Texas

DANIEL S. KAHN
Acting Chief, Fraud Section

By: _____

Timothy A. Duree
Assistant Deputy Chief
Criminal Division, Fraud Section

9