1                UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF TEXAS

3                         — — —

        THE HONORABLE VANESSA D. GILMORE, JUDGE PRESIDING
4    ───────────────────────────────────────────────────────

UNITED STATES OF AMERICA,         No. 4:20-cr-00522-1
5
                    Plaintiff,
6
vs.
7
LEE E. PRICE, III,
8
                    Defendant.
9    ───────────────────────────────────────────────────────
                    SENTENCING HEARING
10
        OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS
11
                    Houston, Texas
12
                 November 29, 2021
13   ───────────────────────────────────────────────────────

14   APPEARANCES:

15   For the Plaintiff:        Matthew G. Grisier
                               Andrew Tyler
16

17   For the Defendant:        Thomas S. Berg

18
     Reported by:              Nichole Forrest, RDR, CRR, CRC
19                             Official Court Reporter
                               United States District Court
20                             Southern District of Texas
                               nichole_forrest@txs.uscourts.gov
21

22
     Proceedings recorded by mechanical stenography.  Transcript
23   produced by Reporter on computer.

24

25

1               PROCEEDINGS
2  _____

3          (The following proceedings held in open court.)

4                      *   *   *

5                 THE COURT: United States of America versus
6  Lee Price.  For the United States?

7                 Who is here for the United States?

8                 MR. GRISIER:  Matthew Grisier with Andrew
9  Tyler.

10                THE COURT:  Who did you say?

11                MR. GRISIER:  I apologize, Your Honor.
12  Matthew Grisier for the United --

13                THE COURT:  Grisier?

14                MR. GRISIER:  Yes.  With me is co-counsel,
15  Andrew Tyler.

16                THE COURT:  Tyler?  All right.

17                For the defendant, please?

18                MR. BERG:  Tom Berg.

19                THE COURT:  Mr. Berg.

20                We're here this morning for sentencing.

21                Mr. Grisier, has the United States had a
22  chance to review the presentence investigation report and
23  addendum to that report?

24                MR. GRISIER:  Yes, we had.

25                THE COURT:  Mr. Berg, did you and your

09:36:26
09:36:28
09:36:28
09:36:28
09:36:28
10:38:37
10:38:38
10:38:47
10:38:51
10:38:54
10:38:54
10:38:57
10:38:58
10:39:00
10:39:01
10:39:05
10:39:06
10:39:09
10:39:12
10:39:13
10:39:15
10:39:19
10:39:24
10:39:26
10:39:28
10:39:29

10:39:30  1   client get a chance to review the presentence

10:39:32  2   investigation, as well as the addendum to that report?

10:39:35  3                  MR. BERG:  We did.

10:39:36  4                  THE COURT:  Then presentence investigation

10:39:37  5   and addendum will be placed into the record under seal.

10:39:41  6   In the event there is any appeal of this case, the only

10:39:43  7   portion that will not be disclosed will be that portion

10:39:45  8   that contains a sentencing recommendation from the

10:39:48  9   probation department to the Court.

10:39:51 10                  There were objections by the United States

10:39:56 11   and by the defense.

10:39:57 12                  Let me turn first to the government's

10:40:00 13   objection.  The government essentially objects to the

10:40:06 14   calculation, basically the base-offense-level issue, which

10:40:12 15   I've looked at and looked at again with the probation

10:40:16 16   department.

10:40:17 17                  And I think that the probation department

10:40:19 18   got it right.  When we have to go back and look at 2B1.1

10:40:27 19   in calculating it, it comes out to be a 27.

10:40:52 20                  I guess it's y'all's position you think it

10:40:55 21   should be 28.  We should use A and not B?

10:41:00 22                  MR. GRISIER:  That's correct, Your Honor.

10:41:01 23                  THE COURT:  Have you looked at it again

10:41:02 24   since you looked at the addendum?

10:41:04 25                  MR. GRISIER:  I have, Your Honor, as has

10:41:05  1   co-counsel.  Representation that I have is that

10:41:09  2   essentially what we did was calculate using

10:41:15  3   2S1.1(a)(1)(A) --

10:41:15  4                THE COURT:  I have to go back to B; to

10:41:19  5   B1.1.  It refers me back.  I have to look at 2B1.1; then I

10:41:24  6   have to look at B.

10:41:25  7                MR. GRISIER:  It's the 2S1.1(a)(2) that

10:41:28  8   refers back to 2B1.1.  We're looking at 2S1.1(a)(1).

10:41:32  9                THE COURT:  I know.  But then you've got a

10:41:35  10  1957.  I have to go back to 2B1.1.  You started out as 18

10:41:40  11  USC Section 1957.

10:41:43  12               Anyway, the government's objection is

10:41:45  13  overruled.  I think that it's a 27 and not a 28.

10:41:50  14               MR. GRISIER:  Understood.

10:41:51  15               THE COURT:  I think it's appropriately

10:41:52  16  calculated by the probation at the lower number.

10:41:57  17               I think that's the only objection of yours

10:41:59  18  that you had that hasn't been addressed by the addendum.

10:42:02  19  Is that correct?

10:42:02  20               MR. GRISIER:  That is correct, Your Honor.

10:42:04  21               THE COURT:  Then let me go to the

10:42:07  22  defendant's objection.

10:42:09  23               Mr. Berg, your objections are essentially

10:42:12  24  that you don't think that he should get the specific

10:42:15  25  offense characteristic in paragraph 50 for the more than

10:42:19  1    one million because he got less than a million dollars

10:42:22  2    from each of the two banks that he defrauded and that I

10:42:25  3    should not aggregate those amounts for the $1.7 million

10:42:30  4    that he got to give him the plus-two.

10:42:33  5                        Is that basically it?

10:42:34  6                        MR. BERG:  That is basically it.  That is

10:42:36  7    how I read those provisions.

10:42:38  8                        THE COURT:  The objection is overruled.

10:42:39  9                        And then the second objection is to

10:42:41  10   essentially paragraph 53, the obstruction of justice.

10:42:45  11                       Look, really?  He's going to try to say he

10:42:52  12   didn't obstruct.  He's going out there telling witnesses

10:42:56  13   not to talk to the government; that's obstruction.  That's

10:42:59  14   like ridiculous.

10:43:01  15                       So that objection is overruled.

10:43:05  16                       On the other hand, I will give you the

10:43:06  17   three points for acceptance of responsibility because he

10:43:10  18   did at least try to accept responsibility at the end.

10:43:12  19   I'll give you the three points for acceptance of

10:43:15  20   responsibility.  That takes the total offense level in

10:43:18  21   paragraph 57 to 26, which changes the guideline range in

10:43:26  22   paragraph -- changes the guideline range in paragraph 105,

10:43:38  23   I guess it is, to -- that changes that to 110 to 137.

10:43:55  24                       Does it change the fine range?

10:43:59  25                       THE PROBATION OFFICER:  The bottom of the

```
10:43:59   1   fine range is 25,000.
10:44:01   2              THE COURT:  Then the fine range in
10:44:04   3   paragraph --
10:44:20   4              THE PROBATION OFFICER:  I believe it's
10:44:21   5   114.
10:44:22   6              THE COURT:  That changes the range from
10:44:25   7   $25,000 to $4,045,265.46.
10:44:32   8              Mr. Berg, was there any other factual
10:44:34   9   inaccuracies in the report that could have an impact on
10:44:39  10   sentencing at all?
10:44:40  11              MR. BERG:  No, Your Honor.
10:44:40  12              THE COURT:  The Court adopts the
10:44:42  13   presentence investigation report and the addendum with the
10:44:45  14   changes that the Court has just made today.  Finds that
10:44:47  15   the statutory range of punishment on Counts 1 and 2 is not
10:44:51  16   more than 20 years; Counts 3, 4, 5, not more than ten
10:44:55  17   years.  Supervised release on Counts 1 through 5 not more
10:45:00  18   than three years.  Fine $4,045,265.46.  Restitution
10:45:10  19   $1,689,952.  Special assessment is $500.
10:45:14  20              Under the sentencing guidelines, based on
10:45:17  21   the total offense level of 26, Criminal History Category
10:45:19  22   of V, provides for a guideline range of 110 to 137 months.
10:45:25  23   Supervised release term of one to three years.  Fine range
10:45:30  24   $25,000 to $4,045,265,46.  Restitution $1,689,952.
10:45:41  25   Special assessment is $500.
```

```
10:45:44    1              All right, Mr. Berg, would you like to say
10:45:49    2   anything on behalf of your client?
10:45:51    3              MR. BERG:  Well, my client -- I would like
10:45:53    4   him to speak first.
10:45:55    5              THE COURT:  He wants to speak first?
10:45:56    6              MR. BERG:  Yes.  He and I spent a long
10:45:58    7   time getting to this point where he can speak well as to
10:46:02    8   his circumstances.
10:46:04    9              THE COURT:  All right.  That's fine.
10:46:05   10              Mr. Price, what would you like to say?
10:46:11   11              THE DEFENDANT:  I wrote a letter to you as
10:46:17   12   well I stand before you guilt.
10:46:33   13              THE COURT:  Speak into the mic.  I want to
10:46:35   14   be able to hear what you're saying.
10:46:36   15              THE COURT REPORTER:  Excuse me, Your
10:46:36   16   Honor, I can't hear the defendant.
10:46:36   17              THE COURT:  Speak up.
10:46:36   18              THE DEFENDANT:  I stand before you a
10:46:38   19   guilty man.  Guilty of having made a terminal mistake and
10:46:41   20   all honesty, it was mistake because you knew better
10:46:44   21   (indiscernible) would bring --
10:46:46   22              THE COURT:  Slow down.  I want to hear
10:46:48   23   what you're saying.  You need to go slower and a lot
           24   louder.
           25              THE COURT REPORTER:  Your Honor, I cannot
```

1    hear the defendant.

2                    (Due to defendant's mask and inadequate

3    sound system, defendant's statement could not be

4    reported.)

5                    THE COURT:  Did you look at your criminal

6    history?

7                    You don't have a year since you were 15

8    that you weren't involved in something in the criminal

9    justice system.  Not one year.  Every single year; 27

10   different offenses charged against you since you were 15

11   years old.  I have never seen a criminal history like

12   this.  You haven't tried to do anything with your life at

13   all.  What is the deal?

14                   Talk to me.  Stop reading stuff to me.

15   Talk to me.

16                   THE DEFENDANT:  That's kind of the first

17   time I actually had which I knew -- I have -- I'm -- when

18   I actually had there and look at it.  It was more of a --

19                   THE COURT:  This is you.  Every single

20   year since you were 15, 16 years old you've had an

21   allegation of a crime.  You didn't get convicted of all of

22   them.  Some of them they just let go because you got

23   convicted of other crimes.  So they kind of rolled them

24   all together.

25                   I couldn't believe it.  It's page after

10:52:16  1   page after page after page.  This guy -- I look at your

10:52:22  2   family history, and it doesn't look like this is the kind

10:52:24  3   of life you should have had based on that family that you

10:52:33  4   came from.  It doesn't look like it goes together.

10:52:36  5            You got a GED, went to college for a

10:52:38  6   minute, and then you just decided that you were just going

10:52:43  7   to be a thief.  You just kind of made up your mind one

10:52:46  8   day, I'm just going to be a thief or what?

10:52:48  9            THE DEFENDANT:  No.  I think it was -- I

10:52:51  10  was running with a lot of (indiscernible) when I came out

10:52:53  11  here to Houston, I started college at Texas Southern.  I

10:52:58  12  ran with a lot of older crowds that were -- and no way on

10:53:03  13  the right path.

10:53:04  14            THE COURT:  Uh-huh.

10:53:05  15            THE DEFENDANT:  So I kind of got pulled

10:53:08  16  towards a certain direction.  Honestly, at that time

10:53:10  17  coming up, I enjoyed it.  I liked it.  It was a life that

10:53:15  18  I chose.  And as growing up and now obviously having a

10:53:20  19  child now and seeing, you know, exactly how much it's

10:53:25  20  costing me, and just watching news recently, I was seeing

10:53:29  21  so many deaths popped up, I decided what if I had died?

10:53:33  22  Now when I got really -- my obituary that was something

10:53:38  23  that I could not (indiscernible) myself.

10:53:45  24            THE COURT:  What's your future plan?

10:53:47  25            THE DEFENDANT:  I enrolled in school.  I

10:53:49  1  plan on taking my credits.  I'm working on curriculum.
10:53:54  2  I'm following it, but they don't offer mail
10:53:57  3  correspondence.  I been working on university that I can
10:54:00  4  transfer courses.  Put the work in getting my degree in
10:54:05  5  sociology.
10:54:06  6           And I do plan on -- hopefully I'm going
10:54:11  7  into real estate investment full time; not just jumping
10:54:17  8  fences, hurdling the fence with illegal and legal --
10:54:21  9           THE COURT:  You need to slow your roll.
10:54:26  10  You're just 30 years old, and you have this much criminal
10:54:30  11  history.  You need to slow your roll.  You'll be dead
10:54:33  12  before you're 40.
10:54:34  13           This doesn't make any sense.  It literally
10:54:38  14  doesn't make any sense.  You have a dad who retired from a
10:54:44  15  job that he spent 30 years in, a good job, and a mom who
10:54:51  16  is doing good stuff, and parents who were trying to figure
10:54:56  17  out how to make the best of the divorce situation and go
10:55:01  18  back and having an opportunity to be parented by both
10:55:05  19  parents.  This makes literally no sense.
10:55:16  20           Then you mess up your mom's house by
10:55:19  21  putting money on her house.  You messed up her deal.  What
10:55:25  22  did you do pay off the mortgage or something?
10:55:27  23           THE DEFENDANT:  Yes.
10:55:27  24           THE COURT:  You thought you were doing her
10:55:30  25  a favor by paying her mortgage off with stolen money.  It

10:55:35  1  didn't turn out to be a good favor.  Now she's going to

10:55:38  2  have a big-ass lien on her house.

10:55:39  3            THE DEFENDANT:  Yes.

10:55:40  4            THE COURT:  Did you tell her that she had

10:55:41  5  the lien on her house?

10:55:42  6            THE DEFENDANT:  Yes.

10:55:45  7            THE COURT:  They work hard in regular

10:55:47  8  jobs.  Then you show up like you're the lottery dude.

10:55:52  9  That makes no sense at all.  Mess up your mom's whole

10:55:57  10  deal.  That makes no sense.  You going to mess up her

10:56:03  11  house that she already lived in -- how long had she lived

10:56:06  12  in that house before you did that?

10:56:10  13            THE DEFENDANT:  Maybe since '97.

10:56:17  14            THE COURT:  When?

10:56:18  15            THE DEFENDANT:  Maybe since '97.

10:56:21  16            THE COURT:  So 20 years.  She been paying

10:56:23  17  on the mortgage for 20 years.  Doing fine on her own I

10:56:26  18  guess.

10:56:27  19            THE DEFENDANT:  Yes, Your Honor.

10:56:28  20            THE COURT:  Then you come in and you're

10:56:30  21  like big man on campus and put $50,000 on her mortgage and

10:56:35  22  make her seem like it's all good.  Now she's got a big

10:56:39  23  lien from the government on her house that she had already

10:56:41  24  been paying for 20 years.  Mess up her whole deal.  Makes

10:56:54  25  no sense.  Then -- after you get out the jail, you going

10:57:02  1    to be a real estate investor?  Is that what you said?

10:57:04  2                THE DEFENDANT:  Yes, Your Honor.  I still

10:57:06  3    have partial real estate company now that my child's

10:57:09  4    mother operates that we have together, and I plan on

10:57:14  5    getting back into the business.

10:57:22  6                THE COURT:  Okay.  All right.

10:57:26  7                Mr. Berg, would you like to say anything

10:57:28  8    else on behalf of your client?

10:57:29  9                MR. BERG:  I would.  My first words to my

10:57:31  10   client when we met were that a con man above all cons

10:57:38  11   himself.

10:57:38  12                THE COURT:  Pardon me?

10:57:40  13                MR. BERG:  A con man above always cons

10:57:42  14   himself before he cons anybody else.  And Mr. Price's

10:57:45  15   struggle will be, as it has been, in not deceiving himself

10:57:51  16   as well as deceiving others.

10:57:54  17                Like I said, we've spent months over this

10:57:58  18   particular issue:  Getting him to acknowledge his

10:58:02  19   responsibility.  We got there I think, at least in terms

10:58:05  20   of acceptance of responsibility for this, and he is taking

10:58:09  21   some affirmative steps to get more education and a bit

10:58:16  22   more focus in his life.  It will be a battle not to take

10:58:19  23   the easy way.  That is his struggle.  And we can only do

10:58:24  24   so much.

10:58:28  25                And regardless, even with the advantages

10:58:32  1   of the lower sentencing guidelines that we've got, he's

10:58:35  2   going to do a substantial sentence for this crime.  And he

10:58:41  3   needs -- I've reiterated to him constantly that he needs

10:58:46  4   to take advantage of that time, to do things that are

10:58:49  5   positive.  If he's to have a relationship with his child,

10:58:52  6   he's got to work on himself.

10:58:56  7            THE COURT:  Absolutely.

10:59:05  8            MR. BERG:  But I think he's capable of

10:59:07  9   doing it.  He's talented and intelligent, but it's

10:59:10  10  misspent.

10:59:15  11           THE COURT:  I like that con man's first

10:59:18  12  con is himself.  He's trying to convince himself what he

10:59:21  13  was doing was some legitimate business deal here.  This

10:59:23  14  was nothing but theft.  No different than sticking up a

10:59:27  15  store.  Sticking up a bank.

10:59:34  16           Anything from the United States,

10:59:37  17  Mr. Grisier?

10:59:38  18           MR. GRISIER:  Yes, Your Honor.  The

10:59:39  19  motivating factors here appears to have been the

10:59:42  20  defendant's guilt -- excuse me, his greed.  And as a

10:59:47  21  result of his greed, the defendant obtained $1.6 million

10:59:50  22  in funds set aside by Congress and the Small Business

10:59:56  23  Administration for small business relief during the

10:59:58  24  uncertain months of the COVID pandemic.

11:00:01  25           As a result of the defendant's greed that

11:00:04  1  meant that through these fraudulent applications he took

11:00:07  2  that money off the table from a qualifying small business

11:00:10  3  that perhaps needed that money to help make ends meet,

11:00:14  4  keep employees on the payroll, or meet other qualified

11:00:16  5  expenses under this Paycheck Protection Program.

11:00:20  6          This was a sophisticated offense, Your

11:00:24  7  Honor, involving fraudulent information, false personal

11:00:27  8  identifying information, assumed names.  It required

11:00:31  9  planning on the defendant's part.

11:00:34  10          As a result of that planning, the

11:00:35  11  defendant obtained this money and spent it not on any

11:00:38  12  businesses or any approved expense rather but on luxury

11:00:45  13  cars, a Rolex watch, nightlife and entertainment.

11:00:49  14          But Your Honor has already addressed in

11:00:50  15  some detail the defendant's criminal history and without

11:00:54  16  going too much further into it, the government would just

11:00:57  17  point out that there are echoes of this offense in some of

11:01:00  18  his previous offenses and convictions, including the use

11:01:03  19  of false identifying information to obtain luxury

11:01:09  20  vehicles.  That is an offense dating back from 2014.  I

11:01:13  21  believe it's detailed in paragraph 65.

11:01:15  22          THE COURT:  Right.  Right.

11:01:16  23          MR. GRISIER:  Along with that, Your Honor,

11:01:18  24  shortly after his arrest in this case, after he was placed

11:01:21  25  on bond, the defendant was -- almost immediately stepped

1    back and had his bond revoked, and he has indeed been in

2    custody since August 31 of 2020 I believe, well over a

3    year now.

4              All these things being considered, Your

5    Honor, the government would ask -- would suggest that

6    there is a need for deterrence for this particular

7    defendant, and there is a more general need for

8    deterrence, as well for the general public.

9              While the Paycheck Protection Program, I

10   believe, has expired at this time, Your Honor, there is

11   certainly other emergency relief loan programs that come

12   about as a result of Congressional authorization, whether

13   that is due to a hurricane, an economic disaster from time

14   to time, and there is need for that general deterrence for

15   the public when these programs come up to not take

16   advantage of them in the way that the defendant has done.

17             So all those things being considered, the

18   government would advocate for a sentence within the new

19   guideline range and specifically on the higher end of that

20   range, between 130 and 137 months.

21             Also, so we have a clean record as to the

22   defendant's acceptance, the government is moving for the

23   additional point --

24             THE COURT:  I saw that in your -- I guess

25   it was in your clarification or objections.  It was in

11:02:41  1   your notice of objections and clarification information

11:02:45  2   with respect to the acceptance of responsibility.  So that

11:02:49  3   was clear to the Court.

11:02:49  4            So when I granted the defendant's

11:02:52  5   objection with respect to not getting credit for

11:02:56  6   acceptance of responsibility, I counted that third point

11:02:58  7   in there.  That is how I got to 26.  Obviously, you know

11:03:00  8   that.  But I did see that in your statement.  So that is

11:03:06  9   why I included that in there.

11:03:08  10           All right.

11:03:08  11           MR. GRISIER:  Thank you, Your Honor.

11:03:14  12           THE COURT:  The Court will state the

11:03:16  13  sentence at this time.  The lawyers will have a final

11:03:20  14  opportunity to make objection before the sentence is

11:03:23  15  imposed.

11:03:30  16           It is the judgment of this Court that the

11:03:36  17  defendant, Lee E. Price, III, is hereby committed to the

11:03:39  18  custody of the Bureau of Prisons to be imprisoned for a

11:03:42  19  term of 110 months as to Counts 1 through 5.  All such

11:03:47  20  terms to run concurrently, for a total offense term of 110

11:03:51  21  months.

11:03:53  22           The defendant is before this Court for

11:03:54  23  sentencing.  Having pled guilty to two counts of wire

11:03:57  24  fraud and three counts of engaging in monetary

11:04:01  25  transactions in criminally derived property.

| | | |
|---|---|---|
| 11:04:04 | 1 | The defendant submitted five fraudulent |
| 11:04:06 | 2 | paycheck protection program loan applications for |
| 11:04:09 | 3 | assistance authorized by the CARES Act in response to the |
| 11:04:12 | 4 | COVID-19 pandemic.  Two of those loans were funded and the |
| 11:04:16 | 5 | defendant received $1,689,952 in ill-gotten loan proceeds. |
| 11:04:23 | 6 | He used those loan proceeds in a manner that is |
| 11:04:28 | 7 | unpermissible (sic) under the CARES Act and made |
| 11:04:32 | 8 | outlandish purchases, including buying a 2020 F-350 pickup |
| 11:04:37 | 9 | truck, a Rolex valued at more than $9,000, a 2019 |
| 11:04:44 | 10 | Lamborghini worth more than $200,000 and other |
| 11:04:48 | 11 | expenditures including going to strip clubs, eating out |
| 11:04:52 | 12 | and unfortunately paying off the mortgage on his mother's |
| 11:04:56 | 13 | home. |
| 11:04:57 | 14 | The defendant has an extensive criminal |
| 11:05:00 | 15 | history, beginning at age 16, which has continued |
| 11:05:03 | 16 | uninterrupted absent periods of incarceration.  His |
| 11:05:07 | 17 | criminal history is varied and includes convictions for |
| 11:05:11 | 18 | disorderly conduct, involving discharging a firearm; use |
| 11:05:14 | 19 | of counterfeit money; theft; delivery of marijuana; |
| 11:05:19 | 20 | robbery, involving the display of a handgun; driving while |
| 11:05:23 | 21 | intoxicated; fraudulent use; possession of identification. |
| 11:05:27 | 22 | Numerous other charges were dismissed in |
| 11:05:30 | 23 | light of convictions entered in other cases.  Twenty-seven |
| 11:05:34 | 24 | arrests and/or convictions in all.  The defendant was |
| 11:05:39 | 25 | subject to a term of deferred adjudication, community |

11:05:44  1    supervision at the time of this offense.

11:05:45  2              He was also pending trial in six cases and

11:05:48  3    had been released on bond in each of those cases.  The

11:05:53  4    defendant's history -- criminal history and conduct in the

11:05:56  5    instant offense paints a picture of an opportunistic

11:06:00  6    offender, who is guilty of greed and has been undeterred

11:06:05  7    by repeated interactions with the criminal justice system.

11:06:10  8              The guidelines appropriately contemplate a

11:06:12  9    significant term of imprisonment, even while accounting

11:06:15  10   for exploitation of a program designed to help businesses

11:06:18  11   in a country struggling with an unprecedented loss due to

11:06:25  12   the COVID-19 pandemic.

11:06:28  13             A term of imprisonment of 110 months is

11:06:34  14   something that the Court believes reflects the purposes of

11:06:38  15   the sentence as set forth in 18 United States Code Section

11:06:40  16   3553.  It reflects the seriousness of the offense.  It

11:06:46  17   will promote respect for the law.  It will provide just

11:06:50  18   punishment.  It will deter this defendant and others from

11:06:52  19   engaging in the same sort of criminal conduct.  It will

11:06:57  20   protect the public from further crimes of this defendant.

11:07:00  21             Upon release from imprisonment, the

11:07:02  22   defendant shall be placed on supervised release for a term

11:07:04  23   of three years as to each of Counts 1 through 5.  All such

11:07:08  24   terms to run concurrently.

11:07:12  25             Three-year term of supervised release is

11:07:14  1   imposed in this case to monitor the defendant, as he is

11:07:19  2   reintegrated in the community to assure that he pays the

11:07:24  3   restitution owed, and that three-year term is to each of

11:07:33  4   Counts 1 through 5 to run concurrently.

11:07:35  5                Within 72 hours of release from the

11:07:37  6   custody of the Bureau of Prisons, the defendant shall

11:07:38  7   report in person to the probation office in the district

11:07:40  8   to which the defendant is released.

11:07:45  9                While on supervised release, the defendant

11:07:46  10   shall not commit another federal, state or local crime;

11:07:49  11   shall comply with the standard conditions that have been

11:07:52  12   adopted by this Court; and any mandatory conditions

11:07:55  13   required by law including the following:

11:07:56  14                You must participate in an outpatient

11:07:59  15   substance abuse treatment program and follow the rules and

11:08:01  16   regulations of that program.  The probation officer will

11:08:05  17   supervise your participation in that program, including

11:08:08  18   the provider, location, modality, duration and intensity.

11:08:10  19   You must pay the cost of the program, if financially able

11:08:13  20   to do so.

11:08:13  21                You must not possess any controlled

11:08:16  22   substance without a valid prescription.  If you do have a

11:08:18  23   valid prescription, you must follow the instructions.  You

11:08:21  24   must submit to substance abuse testing to determine if you

11:08:24  25   have used a prohibited substance.  You may not attempt to

11:08:28  1   obstruct or tamper with the testing methods.

11:08:29  2              You may not use or possess alcohol.

11:08:32  3              You must make restitution to the victims

11:08:34  4   totaling $1,689,952 to the following:  Harvest Bank,

11:08:50  5   $752,452; and the Small Business Administration, $937,500

11:08:56  6   for the loan that you received through the Radius Bank.

11:09:03  7              You must provide the probation officer

11:09:05  8   with any requested access to any requested financial

11:09:09  9   information and authorized release of that financial

11:09:12  10  information, and the probation office may share that

11:09:17  11  information with the U.S. Attorney's Office.

11:09:22  12             The defendant is also ordered not to incur

11:09:26  13  any new credit charges or open additional lines of credit

11:09:29  14  without approval of the probation officer.

11:09:32  15             The defendant shall pay to the United

11:09:32  16  States a special assessment of $500 due and payable

11:09:37  17  immediately.  The Court finds that the defendant does not

11:09:40  18  have the ability to pay a fine within the guideline range

11:09:42  19  in addition to the restitution that is owed.  The fine is

11:09:46  20  waived.

11:09:47  21             The criminal monetary penalties imposed

11:09:51  22  are due as follows:  The defendant shall begin payment

11:09:55  23  immediately.  Any unpaid balance due in the greater of $25

11:09:58  24  per quarter or 50 percent of any wages earned while in

11:10:01  25  prison in accordance with the Bureau of Prisons Inmate

| | | |
|---|---|---|
| 11:10:04 | 1 | Financial Responsibility Program.  Any balance remaining |
| 11:10:06 | 2 | after release from imprisonment shall be due in monthly |
| 11:10:09 | 3 | installments no less than $250 per month to commence 30 |
| 11:10:12 | 4 | days after release from imprisonment to a term of |
| 11:10:15 | 5 | supervised release.  Payment is to be made through the |
| 11:10:17 | 6 | United States District Clerk's Office Southern District of |
| 11:10:22 | 7 | Texas. |
| 11:10:29 | 8 | Mr. Grisier, any reason why the sentence |
| 11:10:32 | 9 | should not be imposed? |
| 11:10:33 | 10 | MR. GRISIER:  No.  I have two points of |
| 11:10:34 | 11 | clarification to raise possibly.  The first is about the |
| 11:10:37 | 12 | restitution.  I want to clarify the victims were Harvest |
| 11:10:40 | 13 | Small Business Finance and the Small Business |
| 11:10:43 | 14 | Administration.  Radius Bank slash also known as -- |
| 11:10:47 | 15 | THE COURT:  I said Small Business |
| 11:10:49 | 16 | Administration for the loan that was originally received |
| 11:10:51 | 17 | from Radius Bank.  I said "Small Business Administration." |
| 11:10:54 | 18 | MR. GRISIER:  Perfect.  Thank you.  The |
| 11:10:55 | 19 | only other point the government would raise is with regard |
| 11:10:59 | 20 | to any forfeiture -- |
| 11:11:00 | 21 | THE COURT:  I'm not there yet.  I'm on the |
| 11:11:02 | 22 | sentence. |
| 11:11:03 | 23 | Any reason why sentence should not -- |
| 11:11:05 | 24 | MR. GRISIER:  No, I do not. |
| 11:11:05 | 25 | THE COURT:  Mr. Berg? |

11:11:07   1                    MR. BERG:  No, Your Honor.

11:11:09   2                    THE COURT:  The sentence is imposed as

11:11:10   3   stated.

11:11:11   4                    Mr. Price, you can appeal your conviction

11:11:13   5   if you believe that your guilty plea was somehow unlawful

11:11:18   6   or involuntary or if you think that there was some other

11:11:21   7   financial defect in the proceedings that was not waived by

11:11:23   8   you.

11:11:25   9                    With few exceptions, any notice of appeal

11:11:26  10   must be filed within 15 days of the date that judgment is

11:11:29  11   entered in this case.  If you are without funds to hire an

11:11:31  12   attorney to represent you, you can apply to the Court for

11:11:34  13   in forma pauperis status and counsel will be appointed for

11:11:34  14   you.

11:11:37  15                    Do you understand me?

11:11:38  16                    THE DEFENDANT:  Yes, Your Honor.

11:11:38  17                    THE COURT:  All right.  Now, Mr. Grisier,

11:11:42  18   we can talk about the forfeiture.  The sentence first.

11:11:46  19   Always trying to make me forget to impose the sentence by

11:11:49  20   talking about other stuff.

11:11:50  21                    MR. GRISIER:  I apologize.

11:11:52  22                    THE COURT:  I have a motion for

11:11:53  23   preliminary order of forfeiture.  Was this unopposed,

11:11:55  24   Mr. Berg?

11:11:55  25                    MR. BERG:  That's correct.

11:11:57   1          THE COURT:  I had one question on this.

11:12:06   2          Mr. Grisier, were the funds that were

11:12:11   3  already referenced in the notice to the Court regarding

11:12:14   4  forfeiture, are those already applied to the restitution?

11:12:19   5          MR. GRISIER:  Not to the restitution.  But

11:12:20   6  to the -- they should be, Your Honor.  We have the --

11:12:24   7  there is a process for doing that through -- we ask the

11:12:28   8  agencies who have seized and forfeited those funds.  I

11:12:31   9  believe it's called remission, where they can accept

11:12:34  10  petitions.  And actually since we'll have a restitution

11:12:36  11  order in this case, we should be able to get those funds

11:12:39  12  back to SBA and Harvest as they come in.

11:12:43  13          THE COURT:  Okay.  So that is the plan

11:12:44  14  then.  Those funds will go to pay off restitution to these

11:12:49  15  victims?

11:12:50  16          MR. GRISIER:  Exactly.  My understanding

11:12:51  17  is they're waiting on the order to come down after the

11:12:53  18  sentencing.

11:12:54  19          THE COURT:  From the Court?

11:12:55  20          MR. GRISIER:  Yes, sir.

11:12:57  21          THE COURT:  Seems like there was a lot of

11:12:58  22  cash still left that could go to some of the victims for

11:13:01  23  the restitution payments; correct?

11:13:02  24          MR. GRISIER:  Yes.

11:13:03  25          THE COURT:  That will happen?

11:13:04    1              MR. GRISIER:  That will happen.  And I

11:13:07    2    believe the vehicles and the Rolex watch have not been

11:13:09    3    auctioned off or sold at this point by the Postal

11:13:14    4    Inspection Service.  Once those assets have been

11:13:18    5    liquidated, those funds will be credited --

11:13:22    6              THE COURT:  To the victims?

11:13:22    7              MR. GRISIER:  Yes.

11:13:23    8              THE COURT:  I gotcha.  Wanted to make sure

11:13:25    9    I understood.

11:13:26   10              It hasn't happened yet because we need the

11:13:32   11    order in place first.

11:13:34   12              MR. GRISIER:  That is my understanding.

11:13:34   13              THE COURT:  Somebody will get a

11:13:36   14    Lamborghini for cheap, huh?

11:13:39   15              MR. GRISIER:  Indeed, Your Honor.

11:13:40   16              THE COURT:  Oh, my goodness.

11:13:44   17              I wanted to make sure that I understood

11:13:47   18    language I was concerned about, and I wanted to ask you if

11:13:53   19    this was the way that the language needed to be stated.

11:13:59   20              It says:  The real property at 10718

11:14:02   21    Staghill Drive is forfeited to the United States.

11:14:04   22              And then it says:  Pursuant to -- then it

11:14:07   23    says:  Limited to a lien against the property in the

11:14:09   24    amount of $50,000.

11:14:11   25              So why does it say that it's forfeited as

1  opposed to just, there is a lien against the property in

2  favor of the United States in the amount of $50,000?

3  What's with that language?

4              MR. GRISIER:  I thought that the

5  limitation would be sufficient to cover that concern.  It

6  was a concern of ours as well.  In drawing up the

7  financial order of forfeiture, we can amend that to make

8  it clearer -- as clear as possible that it is a lien --

9              THE COURT:  I don't really want the words

10  "forfeited" to be in here.  I don't feel comfortable

11  signing an order saying his mother's property that she

12  lived and paid a note on for 20 years is being forfeited

13  to the United States.

14              Why can't we say that the real property is

15  subject to a lien against the property in the amount of

16  $50,000?

17              MR. GRISIER:  No reason we can't.

18              THE COURT:  That is what I'm going to do.

19  I don't feel like writing this word that her property is

20  forfeited to the United States.

21              The real property at Staghill Drive I'm

22  going to put is "encumbered" instead of "forfeited."

23              MR. GRISIER:  Yes, Your Honor.

24              THE COURT:  To the United States, limited

25  to a lien against the property in the amount of $50,000.

And then can she pay on that as well?

MR. GRISIER:  I'm not sure.  That's sort of the purpose of -- I think there is an ancillary hearing on that where Ms. Price will be given notice to appear at that hearing if she wishes to contest it and make representations that she has.

As far as her ability to pay, I'm not sure what that is.  It may also be satisfied at such a time that the house is sold I believe.  It essentially operates as a lien against the house.

THE COURT:  I know.  But I'm assuming that the house she lived in for 20 years she didn't have any immediate plans to put it on the market.

MR. GRISIER:  I would assume not as well. At such a time in the future, that may be possible.

THE COURT:  All right.  We have to set -- you want to set a hearing on the final forfeiture?

MR. GRISIER:  We'll give notice --

THE COURT:  Because of her situation?

MR. GRISIER:  Yes, Your Honor.  I think that is covered in Rule 35.

THE COURT:  She'll have an opportunity to speak at that point?

MR. GRISIER:  Yes.

THE COURT:  All right.  Anything else?

| | | |
|---|---|---|
| 11:17:01 | 1 | MR. BERG:  No.  We had agreed to a lien. |
| 11:17:03 | 2 | So that is correct. |
| 11:17:06 | 3 | THE COURT:  All right.  It says that the |
| 11:17:08 | 4 | home is "encumbered."  It's not going to say it's |
| 11:17:11 | 5 | forfeited.  I don't like that. |
| 11:17:18 | 6 | All right.  Anything else from the United |
| 11:17:20 | 7 | States? |
| 11:17:20 | 8 | MR. GRISIER:  No, Your Honor.  Thank you. |
| 11:17:21 | 9 | THE COURT:  Mr. Berg? |
| 11:17:23 | 10 | MR. BERG:  My client would request |
| 11:17:25 | 11 | designation to Bastrop. |
| 11:17:26 | 12 | THE DEFENDANT:  Yes. |
| 11:17:27 | 13 | THE COURT:  It's the further |
| 11:17:27 | 14 | recommendation of this Court that the defendant be |
| 11:17:29 | 15 | incarcerated at Federal Bureau of Prisons Bastrop if that |
| 11:17:35 | 16 | is available and appropriate. |
| 11:17:36 | 17 | Anything else? |
| 11:17:37 | 18 | MR. BERG:  No, Your Honor. |
| 11:17:39 | 19 | |
| | 20 | (Proceedings concluded.) |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                  C E R T I F I C A T E

2

3

4

5   I hereby certify that pursuant to Title 28, Section 753

6   United States Code, the foregoing is a true and correct

7   transcript of the stenographically reported proceedings in

8   the above matter.

9

10              Certified on January 12, 2022.

11

12

               /s/ Nichole Forrest
13             Nichole Forrest, RDR, CRR, CRC

14

15

16

17

18

19

20

21

22

23

24

25